845 F.2d 1033
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
J. STEPHEN SCHERER, INC. and K Mart Corporation, Plaintiffs-Appellants,
v.
Revelations Antoine LTEE and Joseph Zeenni, Defendants-Appellees.
 No. 87-1354.
 United States Court of Appeals, Federal Circuit.
 Feb. 11, 1988.
 
 Before MARKEY, Chief Judge, RICH and MAYER, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 This appeal is from the April 27, 1987, Order of the United States District Court for the Eastern District of Michigan, Southern Division, dismissing this action, with prejudice, for lack of personal jurisdiction over the defendants and denying plaintiffs' motion for further discovery. We affirm.
 
 OPINION
 A. I. Choice of Law
 
 2
 The correctness of a dismissal for lack of personal jurisdiction and the denial of a motion to compel discovery raise legal questions which are not unique to patent law. It is our practice in resolving legal questions which are not unique to patent law to apply the law of the circuit where appeals from the district court would normally lie. Atari, Inc. v. JS & A Group, Inc., 747 F.2d 1422, 1439-40 (Fed.Cir.1984) (in banc); Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75 (Fed.Cir.1984). An appeal from the District Court for the Eastern District of Michigan would normally lie to the Court of Appeals for the Sixth Circuit; accordingly, we will apply the discernable law of the Sixth Circuit.
 
 II. Procedural Standards
 
 3
 The plaintiff has the burden of proving jurisdiction. First National Bank of Louisville v. J.W. Brewer Tire Co., 680 F.2d 1123, 1125 (6th Cir.1982); Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir.1980), cert. denied, 450 U.S. 981 (1981). This burden remains always upon the plaintiff, but the standard of proof varies with the procedural approach adopted by the district court. The Sixth Circuit has established the following procedural guidelines for motions challenging jurisdiction. Under Sixth Circuit precedent, if the district court decides the issue of jurisdiction solely on the basis of written materials, the plaintiff should be required only to make a prima facie case of jurisdiction at that stage of the litigation. First National Bank of Louisville, 680 F.2d at 1125; Welsh v. Gibbs, 631 F.2d at 438; see generally 2A J. Moore & J. Lucas, Moore's Federal Practice p 12.07[2.-2], pp. 12-55 to 12-60. Under these circumstances the burden on the plaintiff is relatively slight and the pleadings and affidavits must be considered in the light most favorable to the plaintiff. Welsh v. Gibbs, 631 F.2d at 439, 440. In instances where the written submissions raise issues of credibility or disputed issues of fact which require resolution, the district court may conduct an evidentiary hearing. In such instances, the plaintiff must show by a preponderance of the evidence that jurisdiction exists. Welsh v. Gibbs, 631 F.2d at 439.
 
 
 4
 In the present case, the district judge concluded that the pleadings and affidavits raised no issues of material fact or credibility, and she decided the motion on the written submissions of the parties. Thus, plaintiffs were required only to make a prima facie showing of jurisdiction.
 
 
 5
 As to our standard of review, the question of whether the party having the burden of proof has made out a prima facie case is one of law. First National Bank of Louisville, 680 F.2d at 1125. The parties' repeated references to the "clearly erroneous" standard of Rule 52(a), Fed.R.Civ.P., are mistaken. Rule 52(a) has nothing to do with this case, because there has been no trial and there have been no findings of fact which could be labeled clearly erroneous. The suit was dismissed on a Rule 12(b) motion, and Rule 52(a) specifically provides that findings of fact are unnecessary on decisions of motions under Rule 12, with an exception not here relevant. Since the existence of a prima facie case is a legal question, we review the district court's determination de novo.
 
 B. Amenability to Service
 
 6
 Before a court may exercise personal jurisdiction over a defendant, there must be a basis in a statute or rule for the defendant's amenability to service of summons. Omni Capital International v. Rudolf Wolff & Co., 108 S.Ct. 404, ----, 98 L.Ed.2d 415, ----, 56 USLW 4031, 4033 (1987). Service of process in federal actions is governed generally by Rule 4, Fed.R.Civ.P., and Rule 4(e) provides for the manner of service on out-of-state defendants. The first sentence of the rule provides for service on an out-of-state defendant whenever a federal statute authorizes such service. Alternatively, the second sentence of the rule authorizes service of summons "under the circumstances" set forth in a state statute or rule. Thus, under Rule 4(e), a federal court will typically look to either a federal statute or the long arm statute of the state in which the district court sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction. Omni, 56 USLW at 4033.
 
 
 7
 With regard to the first sentence of Rule 4(e), the parties have pointed to no federal statute which might have served as a basis for amenability to process in this case. Therefore, that possible basis for jurisdiction has not been shown.
 
 
 8
 We turn next to the second sentence of Rule 4(e), which directs us to the long arm statute of Michigan. It reads:
 
 
 9
 The existence of any of the following relationships between a corporation or its agents and the state shall constitute a sufficient basis of jurisdiction to allow the Courts of Record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
 
 
 10
 (1) The transaction of any business within the state.
 
 
 11
 (2) The doing or causing of any action to be done, or consequences to occur, in the state resulting in an action for tort....
 
 
 12
 Mich.Comp.Laws Ann. Sec. 600.715 (Mich.Stat.Ann. Sec. 27A.715). Section 600.705 states the same basis of jurisdiction over individuals. See Mich.Comp.Laws Ann. Sec. 600.705 (Mich.Stat.Ann. Sec. 27A.705).
 
 
 13
 Plaintiffs assert that this statute should be construed to extend jurisdiction to the full extent of due process, citing Micro-electronic Systems Corp. v. Bamberger's, 434 F.Supp. 168 (E.D.Mich.1977). However, a recent decision of the Michigan Supreme Court casts doubt on this assertion. In Witbeck v. Bill Cody's Ranch Inn, 428 Mich. 659, 411 N.W.2d 439 (1987), the court stated:
 
 
 14
 In construing Michigan's statute, some courts have concluded that its reach is coextensive with due process tests laid down by the United States Supreme Court. [Citations omitted.] This conclusion is based upon a statement made in Sifers v. Horen, 385 Mich. 195, 198; 188 N.W.2d 623 (1971), that the long arm statute "represents an attempt on the part of the Michigan legislature to expand to its full potential limited personal jurisdiction of Michigan courts over nonresidents." (Emphasis in original.) However, the Sifers Court also declared that its holding rested upon the "excercise [of] jurisdiction to the extent indicated in the statute...." Id. (Emphasis supplied.)
 
 
 15
 Witbeck v. Bill Cody's Ranch, 428 Mich. at 666 n. 3. The court in Witbeck expressly declined to decide the question of statutory interpretation, but based on the Witbeck opinion we believe that the Michigan Supreme Court would adopt a construction more limited than that proposed by plaintiffs, were that court to decide the question. Indeed, the Court of Appeals for the Sixth Circuit recently observed that while at times the Michigan courts have indicated that they intend their long arm statute to reach the outermost limits of due process, the courts have in fact stopped short of that boundary. See Rann v. McInnis, 789 F.2d 374, 377 (6th Cir.1986). Under these circumstances, we are persuaded that the best course is to construe the Michigan statute liberally, but without ignoring the express legislative requirements of the statute. See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 417 (9th Cir.1977).
 
 
 16
 Construing the statute in this fashion, we conclude that it does not render Revelations and Zeenni amenable to service. The affidavit of Dale Miller states that Miller purchased a fingernail polish removing device similar to that described in Revelations' U.S. Patent 4,282,891 in Michigan late in 1980, and that Mr. Zeenni, Revelations' exclusive promoter for the '891 patent, described this as "their" product. Plaintiffs assert that this satisfies the first subsection of the long arm statute, which refers to the "transaction of any business within the state." But it is not enough to show that there was a mere transaction of business in the forum state. The statute plainly requires more: the introductory clause requires that the lawsuit "aris[e] out of" the particular transaction or transactions, and that did not occur here. The '891 patent did not give Revelations a right to sell its product in Michigan, because patents do not confer such a right. Since the sale of the Revelations product to Miller cannot be said to have arisen out of Revelations' patent rights, neither can it be said that this suit to declare the '891 patent invalid and not infringed arose out of that sale. Thus, the terms of the long arm statute are not met.
 
 
 17
 Plaintiffs also argue that licensees under the '891 patent sell licensed products in Michigan, and that these sales satisfy the statute. But plaintiffs have not alleged that the licensees are agents of Revelations or Zeenni, and the record would not support such an allegation. Thus, these sales cannot be attributed to Revelations or Zeenni for the purpose of establishing amenability to service. And again, even if such sales could be attributed to Revelations and Zeenni, which they cannot, this declaratory judgment suit with respect to the '891 patent could not be said to have arisen from those sales.
 
 
 18
 Plaintiffs next point to three meetings in Michigan which were attended by Zeenni and representatives of Revelations in an effort to negotiate a license for Scherer under the '891 patent. Plaintiffs' position is that these meetings constitute a transaction of business. Nothing came of the negotiations, however, and plaintiffs have not cited any authority to support the doubtful proposition that mere negotiations can amount to a transaction of business. In summary, plaintiffs have not alleged conduct sufficient to satisfy the transacting business provision of the Michigan long arm statute.
 
 
 19
 Turning to the second subsection of the Michigan long arm statute, plaintiffs argue that their allegations of tortious interference with contract, unfair competition, and antitrust violations satisfy the statutory requirement that the defendant have caused "consequences to occur [ ] in the state resulting in an action for tort." Initially, we note that we cannot glean from the record even a scintilla of evidence which would clothe these naked allegations with any substance. Even accepting, as we must, the allegations of the complaint as true, plaintiffs have failed to properly invoke the tortious conduct provision of the statute. Stripped to its roots, plaintiffs' theory is that a tortious act committed outside the state gives rise to a tort claim inside the state, based on the fortuitous circumstance that the plaintiff is a Michigan corporation and so can claim that any economic injury which it suffers necessarily has repercussions in Michigan. We think it unlikely that the Michigan legislature intended this construction of the statute, because it would result in gross violations of due process. Moreover, plaintiffs have not cited a single case to support this interpretation of the statute, and we decline to accept it. We conclude that Revelations and Zeenni are not amenable to service based on the Michigan long arm statute.
 
 C. Due Process
 
 20
 Even if we are wrong and the Michigan long arm statute does authorize service of process on Revelations and Zeenni, due process would be violated if the district court exercised jurisdiction in this case. Pursuant to International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny, a due process inquiry necessarily requires a consideration of the defendant's contacts with the forum. A threshold matter we must consider is the meaning of "forum" within the context of this case. Plaintiffs argue that because this suit arises under federal law and Revelations and Zeenni are aliens, the appropriate forum in this case is the United States as a whole, and not merely the State of Michigan. Thus, under plaintiffs' theory, we should focus our due process inquiry on Revelations' and Zeenni's contacts with the United States in its entirety.
 
 
 21
 We reject this approach. As Justice Blackmun explained for a unanimous Court in Omni, supra, one prerequisite to a federal court's exercise of jurisdiction is a statute or rule authorizing service of summons. 56 USLW at 4033. Here the relevant rule is Rule 4(e) of the Federal Rules of Civil Procedure, which authorizes service of summons "under the circumstances" provided for in a state statute or rule. Among the circumstances limiting the states in their enaction of jurisdictional statutes are the constraints imposed by the due process clause of the fourteenth amendment. Under that due process clause, a state is constrained to base its jurisdiction on a defendant's contacts with the state. Pursuant to the command of Rule 4(e), we must similarly limit our inquiry to the present defendants' contacts with the state where the district court sits, here Michigan. See Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 296-97 (3d Cir.), cert. denied, 474 U.S. 980 (1985), cited with approval, Omni, 56 USLW at 4034.
 
 
 22
 Having defined the forum, we turn to consider the extent of Revelations' and Zeenni's contacts with Michigan. The Court of Appeals for the Sixth Circuit follows a well-established test for determining whether an out-of-state defendant has sufficient "minimum contacts" with the forum state to satisfy due process, as stated in R.L. Lipton Distributing Co. v. Dribeck Importers, Inc., 811 F.2d 967 (1987):
 
 
 23
 First, the defendant must purposefully avail himself of the privilege of acting in the forum state.... Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
 
 
 24
 R.L. Lipton, 811 F.2d at 969, quoting Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir.1968). We need not concern ourselves with the first and third elements of this test, because it is plain that the second element is not met. The second element requires that the cause of action shall have arisen from the defendant's activities in Michigan. We have already explained that this lawsuit did not arise from the sale of a Revelations fingernail polish removing product in Michigan. As to the three meetings which Zeenni and other representatives of Revelations attended in Michigan in an attempt to negotiate a license with the plaintiffs, it is true that these do have some relation to the present suit. It cannot be said, however, that this suit arose from those meetings, and such minimal contacts by themselves cannot support a finding of personal jurisdiction. Cf. R.L. Lipton, 811 F.2d at 970.
 
 D. Motion to Compel Discovery
 
 25
 Plaintiffs' final challenge is to the district judge's denial of their motion to compel further discovery. In this regard, the district judge stated, "without jurisdiction, you cannot put a party into discovery." This sweeping statement is incorrect as a matter of law, because a district judge does have authority to permit discovery in an attempt to establish jurisdictional facts. Nevertheless, the denial of such a motion will not be cause for reversal except in rare cases. As the Court of Appeals for the Ninth Circuit explained in Wells Fargo Co. v. Wells Fargo Express Co., 556 F.2d 406 (1977):
 
 
 26
 [I]t is clear that a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction.
 
 
 27
 The matter is generally left to the discretion of the trial court. An appellate court will not interfere with the trial court's refusal to grant discovery except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant; such a refusal is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.
 
 
 28
 Wells Fargo, 556 F.2d at 430-31 n. 24 (citations omitted). The Sixth Circuit follows the same approach. See Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240, cert. denied, 454 U.S. 893 (1981). The jurisdictional facts in this case should have been readily available to plaintiffs without any extended discovery, and plaintiffs have not given us any reason to believe that further discovery would reveal a basis for jurisdiction over Revelations and Zeenni. Accordingly, the district judge did not abuse her discretion in denying the plaintiffs' motion to compel discovery.